by our decision in People ex rel. Stewart v. Carlisle, 162 App. Div. 920, 146 N. Y. Supp. 1108.

The order of the Special Term should be reversed, and the motion for a writ of mandamus denied.

Order reversed, with $10 costs and disbursements, and motion for a writ of mandamus denied.

SMITH, P. J., and LYON, J., concur. KELLOGG and WOODWARD, JJ., dissent.

---

MacREYNOLDS v. CONEY ISLAND & B. R. CO.

(Supreme Court, Appellate Division, Second Department.   November 12, 1915.)

1. EVIDENCE ⊜⟹77—PRESUMPTIONS—INFERENCE FROM FAILURE TO CALL WITNESS.

The rule permitting the jury to draw such inferences as they think the proof justifies against a party who fails to call a witness who might reasonably be expected to furnish further proof is not of uniform application, and where plaintiff who asserted injuries resulting from the negligence of the operatives of defendant's car introduced evidence tending to show defendant's ignorance concerning the accident, defendant's failure to call others to prove its ignorance concerning the accident cannot be made the basis of an adverse inference.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 97; Dec. Dig. ⊜⟹77.]

2. NEW TRIAL ⊜⟹40—INSTRUCTIONS—ERROR.

In an action for personal injuries, an instruction that in weighing the credibility of plaintiff they might take into account that her husband was a lawyer, and that sometimes associations do sharpen wits, was not, in the absence of exception or request, error warranting the setting aside of a verdict for defendant, for the association of a witness with a lawyer may sharpen the witness' wits, without any implication of false swearing.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 62–66; Dec. Dig. ⊜⟹40.]

3. APPEAL AND ERROR ⊜⟹856—REVIEW—QUESTIONS PRESENTED FOR REVIEW.

Where plaintiff moved for new trial on all of the grounds stated in Code Civ. Proc. § 999, and for fraud, an order granting new trial must be sustained, if there is support of any of the grounds.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3406–3424, 3429–3434; Dec. Dig. ⊜⟹856.]

4. EVIDENCE ⊜⟹594—WEIGHT—UNCONTROVERTED TESTIMONY—CREDIBILITY OF WITNESSES.

Where a street car company was unable to obtain any evidence concerning an alleged accident, the fact that plaintiff was not directly contradicted does not entitle her to a verdict on the theory that her evidence was not contradicted; the jury having the right to weigh her credibility.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2431; Dec. Dig. ⊜⟹594.]

5. CARRIERS ⊜⟹318—PERSONAL INJURIES—EVIDENCE.

In an action for injuries plaintiff claimed to have sustained, due to the negligence of defendant's operatives when she was alighting from a car, verdict for defendant *held* not against the evidence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. ⊜⟹318.]

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. NEW TRIAL ⬤⟜28—GROUNDS—FRAUD—EVIDENCE.
    In an action for injuries received while alighting from a street car, where verdict was for defendant, who claimed to be unable to obtain any information concerning the accident, a showing that some of its operatives gave information concerning a similar accident, but fixing it at a different time, does not warrant new trial on the ground of fraud.
    [Ed. Note.—For other cases, see New Trial, Cent. Dig § 42; Dec. Dig. ⬤⟜28.]

Appeal from Special Term, Kings County.

Action by Frances MacReynolds against the Coney Island & Brooklyn Railroad Company. From an order setting aside the verdict, and granting plaintiff a new trial, defendant appeals. Reversed, and verdict reinstated.

See, also, 155 N. Y. Supp. 660.

Argued before JENKS, P. J., and STAPLETON, MILLS, RICH, and PUTNAM, JJ.

D. A. Marsh, of Brooklyn, for appellant.
Frederick N. Van Zandt, of New York City, for respondent.

JENKS, P. J.   I do not agree with the learned trial court that "errors" in its charge required it to set aside the verdict. The court has not specified the "errors," and we have but the assignment thereof as made by the respondent.

[1] There is a rule that permits the jury to draw such inferences as they think the proof justifies against a party who omits to call a witness who might reasonably be expected to furnish further proof upon any of the issues, which is discussed and declared in Bleecker v. Johnston, 69 N. Y. 309, Sugarman v. Brengel, 68 App. Div. 377, 74 N. Y. Supp. 167, and Kirkpatrick v. Allemannia Fire Ins. Co., 102 App. Div. 327, 92 N. Y. Supp. 466, affirmed 184 N. Y. 546, 76 N. E. 1098. We said in Van Wicklen v. Van Wicklen, 142 App. Div. 507, 127 N. Y. Supp. 75, that this is not a hard and fast rule of uniform application. The plaintiff complained of the negligence of the defendant towards her as its passenger between 5 and 6 p. m. of June 20, 1913, when its car was passing in a certain street near certain cross streets. It appeared that the defendant had certain records which showed, but "not exactly," the particular cars and the motormen and conductors thereof which traveled in this locality during that period of time. The sole proof offered by the defendant was that it had received no report of the incident complained of, and that its investigation thereof, made after the receipt of plaintiff's claim, was in vain. The plaintiff neither contradicted nor weakened this proof. It also appeared that, shortly before the trial, Primrose, an assistant to the trial counsel for the defendant, had assembled quite a number of motormen and conductors, laid the particulars of plaintiff's claim before them, and particularly examined some of the number, of whom all denied any knowledge of the incident. The defendant did not call any of these persons, and did not give any explanation of this omission.

It is now contended that the court erred in denying the right of the jury, if they thought proper, to apply the rule which I have mentioned to this omission. But the proof offered by the defendant was confined to its ignorance and its inability to inform itself. And the doings of Primrose, his efforts for information, and his failure to obtain it, were elicited by the plaintiff upon the direct examination of Primrose, whom she called as her witness, and whom she did not attempt to contradict. So at the close of the case the defendant had offered proof, uncontradicted and unshaken, of its ignorance and inability to inform itself, and the plaintiff had proved that such investigation as the defendant had made among its servants was fruitless. Such inference, as is well said, is not permitted from the mere nonproduction of the witness, but from the fact that his testimony would not have been favorable. Wigmore on Evidence, §§ 285, 286. The defendant had the right to rest upon the proof adduced by the plaintiff, without being subject to the inference of "fear of exposure" because it did not call witnesses to corroborate such proof. Of course, a different question might be presented if the defendant had called Primrose as its witness to testify to his actions, or if such testimony had been elicited upon his cross-examination by the plaintiff.

[2] The other exceptions, save one, all relate to this ruling and kindred rulings, but none of them requires discussion. The remaining exception relates to the "emphasis" of the court in its utterance "as to the interest of the plaintiff and her inclination, perhaps unconsciously, to exaggerate." Of course, emphasis even short of irony may and does lade or lighten words. But printed words are all we have, and these do not appear susceptible of unfairness, however emphasized. Moreover, the learned court was prompt to disavow any intent to give undue emphasis to any of its utterances. The learned court in its charge said:

"You have a right to take into account that the husband [i. e., of the plaintiff] is a lawyer, in weighing her testimony, and in weighing his. Of course, sometimes associations do sharpen wits."

It is now contended that this expression was error. But the question is not whether it was error, or even capital error; but whether it was such error as would justify the setting aside of the verdict, in the absence of either exception or request for instruction. So far as the honesty of the witness was concerned, it mattered not whether her husband was a lawyer or a layman. The final sentence was unfortunate, in that it could be susceptible of sinister suggestion, but not necessarily. The court was speaking of the plaintiff as a witness. I trust that association of a witness with a lawyer may be said to sharpen the witness' wits without the implication of false swearing; for it is common knowledge that the proper preparation of a case usually involves "association" of counsel and witnesses in discussion of the testimony that is to be given by the latter. In any event, I think, in the absence of exception or request, that the verdict should not be disturbed for this remark.

[3] I find nothing else in the charge that requires comment. But, as the plaintiff moved upon all of the grounds stated in section 999

of the Code of Civil Procedure and for fraud, she is entitled to our consideration of them. Ross v. Metropolitan Street Railway Co., 104 App. Div. 382, 93 N. Y. Supp. 679.

[4, 5] It is urged that the verdict is against the evidence, because the jury were not entitled to disbelieve the plaintiff. This proposition seems to rest upon the fact that she was uncontradicted, and also upon the further fact that there was corroboration in some respects. If the proof of the defendant, as well as that adduced upon the subject by the plaintiff, as to the ignorance and the vain attempts of the defendant to procure information, is true, the plaintiff could not be contradicted by witnesses called by the defendant. But it does not necessarily follow that therefore she was entitled to the verdict. Such a proposition would put at the mercy of a complainant any large employer of labor, although he gave creditable proof of his ignorance of the occurrence and of his inability to obtain any evidence contrary to or contradictory of the evidence of the complainant. Hull v. Littauer, 162 N. Y. 569–572, 57 N. E. 102, a leading case, declares when the rule that the credibility of a party as a witness is for the jury may be relaxed. And in Gordon v. Ashley, 191 N. Y. 186–193, 83 N. E. 686, 688, the court say:

"When one reasonable mind can infer from all the evidence that a controlling fact was proved, while another reasonable mind can infer that it was not proved, a question is presented for the jury."

And moreover that:

"While the testimony of a single witness, if believed," may suffice, "still it need not be believed if the witness is interested, or his statements, even if uncontradicted, are inconsistent with his own conduct, or so improbable as to require explanation. If a fair argument can be made against the probability of his story, his credibility presents a question for the jury. Even if they do not think that he intended to speak falsely, still they may reject his testimony, if they are satisfied that he was mistaken, owing to interest, bias, a defective memory, or any other reason springing from the evidence."

This utterance is quite in harmony with both the rule and limitation as declared and discussed in Hull v. Littauer, supra.

Plaintiff's version of the incident is as follows: Between 5 and 6 p. m. of June 20, 1913, she and her little child became passengers of defendant's open car at King's Highway. When she paid her fare she asked the conductor to stop at Avenue M. The car was stopped at Avenue N, but started again and traveled past Avenue M, whereupon she stood up and saw the conductor, who, although talking with the motorman, looked in her direction. She rang the bell, the car was stopped, and she alighted, but kept one hand holding the child in the car. Before she could lift out the child the car was started, whereon she ran alongside the car to protect the child, holding it in the car with one hand and crying out at the top of her voice. A passenger reached over and held the child. The plaintiff withdrew her hand, soon the car was stopped, and the conductor brought the child to her. She testifies that she ran by the side of the car, "facing the child in my hands right at the edge of the car," bending over to keep her knees from touching the running board, and with her feet facing the car, moving in a side direction, and that she faced the car all the time she ran,

running with one foot over the other. She thought the car was going fast and that its speed increased.' Before she was relieved of the child she ran almost all the distance of the crossing—or, as her witnesses Mrs. and Miss Bock described it:

"It seemed quite a ways"—"about three-quarters of the length of the [court] room."

Possibly the jury did not credit this testimony, or they may have thought that it was exaggerated, and indicative of mistakes in other parts of her testimony. Possibly the jury may have thought that the plaintiff was in error when she said that she stopped the car, for plaintiff's witness Mrs. Bock, who was seated in the car just behind, testifies that, although she saw the plaintiff alight, she did not see her do anything, and did not see her pull the strap, while the sole other corroborating witness, Miss Bock, said that she did not notice the plaintiff until the car was moving. Possibly the jury may have concluded that, inasmuch as the plaintiff had alighted in safety before the car started, it was not negligence to start the car without waiting for the plaintiff to lift out her child. For the proof is that the little child was on the floor of the car; there is no proof that indicates that the controllers of the car saw, or could in the exercise of due care have seen, the child, or knew that it was in the custody of plaintiff; and the jury may have determined that the conductor was not negligent in not keeping in mind that the plaintiff had entered the car with the child, or the jury may have concluded that the conduct of the plaintiff was not necessary to keep the child from falling from the car.

Again, the jury may have concluded that the plaintiff's alleged injuries were not attributable to this incident. She did not assert that she suffered from any physical injury from contact with the car, but complained of certain more or less occult female disorders, including a subsequent miscarriage. She admitted, and her physician's testimony showed, that theretofore she had been subjected to severe and serious surgical operations which were related to the organs whose condition gave her the pain and suffering to which she testified. It is true that her physician testified, in answer to a hypothetical question, as to the cause of her condition; but the jury may have considered this opinion in the light of his subsequent testimony, which was somewhat qualified by the element of possibility, and of his testimony of the medical history of the patient which involved these severe and serious surgical operations.

[6] On the question of fraud, Dyckman, a former employé of the defendant, deposes that at the said assemblage in Primrose's office Dunn and Krum told him that when they were working a car at the locality in question, "about June 20, 1913," there was an incident similar to that described by the plaintiff, of which they made no report. And Dunn deposed that "some time during the summer of 1913," in the locality described by the plaintiff, an incident like that narrated by the plaintiff happened when he was a conductor, that he had received a letter of inquiry from the attorney for the defendant, that he replied that he remembered such an incident, that thereafter an investigator came to him at Cohoes, N. Y., and asked him if he would

attend the trial if he received money, that thereafter $20 was sent to him, whereupon he came from Saranac Lake to the borough of Brooklyn, that he attended the meeting in Primrose's office, and that he told Primrose he "had had such an accident." But the defendant read an affidavit from Dunn of later date that he had told the investigator that he remembered "an occurrence on some afternoon in the summer of the year 1913," on "Coney Island avenue and some street north of King's Highway," but that the time was between 3 and 4 p. m., when the car was south-bound; that he never had any such accident when the car was north-bound, and that he so informed Mr. MacReynolds (the plaintiff's husband?) when he made the former affidavit, but that Mr. MacReynolds failed to insert such statement. I think that there is neither fraud nor imposition attributable to the defendant. The "accident" was marked by no facts that could distinguish it as peculiar. So far as its features are concerned, it might be one of not infrequent occurrence, and there were no apparent injuries to the participants. Indeed, this very plaintiff testifies that she had "almost" had a similar experience. I can see no fraud worked by the defendant, especially in view of the testimony elicited by the plaintiff from her own witness Primrose, as heretofore pointed out.

I advise that the order be reversed, with costs, and the verdict be reinstated. All concur.

---

MacREYNOLDS v. CONEY ISLAND & B. R. CO.

(Supreme Court, Appellate Division, Second Department. November 12, 1915.)

Argued before JENKS, P. J., and STAPLETON, MILLS, RICH, and PUTNAM, JJ.

